**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TERRY LEE WALLS, | § | |
| TDCJ-CID No. 1247358, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3680 |
| | § | |
| DOUG DRETKE, | § | |
| | § | |
|     Respondent. | § | |

<u>**MEMORANDUM ORDER OF DISMISSAL**</u>

Pending before this court is a motion for summary judgment filed by Doug Dretke, the Director of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID). (Docket Entry No. 16). Based on consideration of the pleadings, the motion, the records, and the applicable law, this court **GRANTS** the motion for summary judgment.

## I. <u>Background and Pleadings</u>

Petitioner, Terry Lee Walls, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241. Petitioner is serving a sentence in the TDCJ-CID for a state court conviction. Petitioner does not contest the constitutionality of his state court conviction. He challenges several prison disciplinary hearings.

Some of Petitioner's pleadings are garbled at best. His original filing consisted of the first page of a form civil rights complaint used by prisoners, followed by nine pages of a form habeas corpus petition. The Clerk filed this case as a civil rights complaint, and the court converted it to a habeas corpus

petition.   On page 2 of the Original Petition, Petitioner checked a box indicating he is challenging a parole revocation proceeding and leaves blank the box indicating a challenge to a disciplinary proceeding.   However,  as  noted,  Petitioner  challenges  prison disciplinary proceedings.

Page  five  of  the  petition  contains  blanks  for  providing information about the subject disciplinary hearing when a prisoner challenges  a  disciplinary  hearing  rather  than  a  state  court conviction.  Petitioner gives the following information concerning the date and case number of the disciplinary cases he challenges. Disciplinary case number:  "20050085792, (unknown), both from the TDCJ Powerledge [sic] Unit, 20050346972 and (unknown)."  Date you were found guilty of the disciplinary violation: "11/04 Powerledge [sic], 3/05 and 8/19/05 and 20050199798 Pack I Unit."

Petitioner sets forth the following three grounds for relief and supporting facts in his Original Petition.

(1)  Violation  of  the  right  to  due  process  in  prison disciplinary proceedings.  Petitioner was falsely accused by TDCJ officials of assault and extortion.  Evidence was presented which proved Petitioner innocent of the charges.  However, officials, knowing  Petitioner's  medical  condition,  prevented  him  from [avoiding] risks of stress and maliciously impeded his attempts to prosecute appeals in each disciplinary case.   In the Powledge cases, Petitioner was assigned to an administrative segregation

-2-

cell and admitted evidence of this fact into evidence, along with notarized documents which proved Petitioner had been conned out of thousands of dollars.

(2) The disciplinary proceedings violated the TDCJ's own due process procedures, and were based upon a fabricated offense report.  Petitioner was falsely accused of having conspired with his wife to extort $1500 from inmate Kline, notwithstanding the fact that Petitioner's wife had absolutely no knowledge of the alleged conspiracy to extort.  Petitioner was denied the right to notice as to the conspiracy statute under which he was charged. Evidence proved Kline did not have $1500 in his account for Petitioner to extort, where it was alleged and wrongfully concluded that he did, in fact, extort from offender Kline.  Evidence proved that the letter addressed to offender Kline's mother was signed by him, however, it was obstructed from the U.S. postal service by the charging officer.  Pack Unit officials refused to process Petitioner's appeal.

(3) TDCJ Administrative officials denied Petitioner the right of access to the courts.  Following each unconstitutional disciplinary conviction, Petitioner submitted his copies of the disciplinary hearing records to a grievance coordinator, only to have the grievance coordinators keep his copies and refuse to process his grievances appealing the disciplinary findings. Petitioner made several requests for the return of these documents.

However, these requests were unavailing.  As a result of this, Petitioner has been unable to identify each alleged disciplinary hearing record.

Petitioner appears to challenge four different disciplinary hearings at two different prison units.  Information concerning the disciplinary hearings in Respondent's summary judgment exhibits follows.

1.  Case no. 20050076474, Assault against prisoner Bueno at the Powledge Unit

On November 17, 2004, Petitioner was charged with assaulting another offender without a weapon on the Powledge Unit, a Level 2, Code 21 violation of the Texas Department of Criminal Justice-Correctional Institutions Division.  Respondent's Summary Judgment Motion, Exhibit B, (Exh. B) p. 1 [Docket Entry No. (DE) 16-3, p.3]. The specific charge was that on November 11, 2004, Petitioner "assault[ed] Offender Bueno ....  without a weapon by slapping Bueno across the face.... [T]he assault did not result in any injuries." Id.

On November 22, 2004, the disciplinary hearing officer found Petitioner guilty of the violation based on the officer's written report and verbal testimony.   Id.   He assessed petitioner's punishment at: (1) a loss of forty-five days of recreation privileges, (2) a loss of forty-five days of commissary privileges, (3) a reduction in class from L1 to L3, and (4) a loss of 30 days

of good time credit.  Id.

On December 1, 2004, Petitioner filed a Step-One Grievance, initiating grievance case number 2005056836, appealing disciplinary case number 20050076464.  Exh. C, p. 1.  This grievance was denied on December 29, 2004.  Exh. C, p. 2.  On January 3, 2005, Petitioner submitted a Step-Two grievance, which was denied on January 20, 2005.  Exh. C, p. 3-4.  Petitioner also submitted a second set of Step-One and Step-Two grievances, but those were summarily denied because his case was addressed by the first set of grievances.  Exh. C, p. 5-9.

2.  Case no. 20050085792, Unauthorized Business (originally extortion), Powledge Unit

On November 23, 2004, Petitioner was charged with extortion, a Level 1, Code 5.1 violation.  Exh. D, p. 1 [DE 16-4, p. 3].  The specific charge was that Petitioner "did attempt to extort $5000 from (Offender Moss, Anthony) in that Petitioner was to have his wife perform legal research for Offender Moss, which was not done. When Moss refused to pay the fee, Petitioner made threats involving Moss's mother." [Ruby Nolley] Id.  On November 30, 2004, the hearing officer found Petitioner guilty of a lesser-included violation, operation of an unauthorized business, based on the officer's written report and verbal testimony.  Id.  The TDCJ-ID Disciplinary Rules and Procedures for Offenders manual provides at Section IX, part A, "When a hearing officer determines that a

lesser-included offense more accurately represents the offender's conduct and culpability, the hearing officer may find the offender guilty of the lesser included offense instead of the more serious offense, without further notice and hearing." Exh. J, p. 18-19 [DE 16-7, p. 23-24].   Petitioner's punishment was assessed at: (1) a loss of forty-five days of recreation privileges, (2) a loss of forty-five days of commissary privileges, (3) a suspension of visitation privileges through January 30, 2005, (4) cell restriction for forty-five days, and (5) a loss of ninety days of good time credit.   Exh. D, p. 1 [DE 16-4, p. 3].

3.   Case no. 20050206948, Possession of Contraband at the Pack 1 Unit

        On April 1, 2005, Petitioner was charged with possession of contraband, a Level 2, Code 16 violation.   Exh. F p. 1 [DE 16-5, p. 3].   The specific charge was that Petitioner "did possess contraband, namely, one Fossil watch and one altered property slip." Id.   On April 7, 2005, the hearing officer found Petitioner guilty of the offense based on the officer's report and the offender's statement at the hearing.   Id.   Petitioner's punishment was assessed at: (1) a loss of thirty days of recreation privileges, (2) a loss of thirty days of commissary privileges, and (3) a loss of thirty days of good time credit.   Id.   Petitioner's

grievance record indicates there was a Step-One grievance filed in this case, but it was returned to Petitioner because it did not comply with the instructions for filing grievances.  Exh. G, p.1 [DE 16-5, p. 11].

4.  Case no. 20050346972, Extortion at the Pack 1 Unit

On August 17, 2005, Petitioner was charged with the offense of extortion, a Level 1, Code 5.1 violation.  Exh. H, p. 1 [DE 16-6, p. 3].  The specific charge was that Petitioner "did conspire to extort fifteen hundred dollars from Offender Kline, Eugene, # 11247358, by writing letters to Dorothy Kline (Kline's mother) acting as Eugene Kline requesting fifteen hundred dollars be sent to Cheryl Walls (Petitioner's wife) and then distributed to Walls." Id.  On August 19, 2005, the hearing officer found Petitioner guilty of the offense based on the officer's report and the officer's live statement.  Id.  Petitioner's punishment was assessed at: (1) a loss of forty-five days of recreation privileges, (2) a loss of forty-five days of commissary privileges, and (3) fifteen days of solitary confinement.  Id.  Petitioner did not lose any good time credit as a result of this case.  Id.  A review of Petitioner's grievance record indicates there was a Step-One grievance filed in this case, but it was returned to Petitioner because it did not comply with the instructions for filing grievances.  Exh. I at 1.  If a grievance is returned, there is not a record of the exact reason for which it was returned.  Id.

## II. <u>Summary Judgment Standard</u>

A party seeking summary judgment bears the initial burden of informing the district court of the basis for the motion and identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2547, 2554 (1986). Once the movant carries this burden, the burden shifts to the non-movant to show that summary judgment should not be granted. <u>Id.</u> A party opposing a properly supported motion for summary judgment "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." <u>Krim v. BancTexas Group, Inc</u>., 989 F.2d 1435, 1442 (5th Cir. 1993).

In considering a motion for summary judgment, a court must review the material factual issues and give the non-moving party the benefit of every reasonable inference with respect to the facts alleged by that party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 106 S.Ct. 1348, 1356 (1986). To meet its burden, the non-moving party must present "significant probative" evidence indicating that there is a triable issue of fact. <u>Conkling v. Turner</u>, 18 F.3d

1285, 1295 (5th Cir. 1994).  If the evidence rebutting the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted.  <u>Anderson</u>, 477 U.S. at 249-50, 106 S.Ct. at 2511.

### III. <u>Insufficient Evidence</u>

Petitioner claims that he proved his innocence in three of his disciplinary cases (assault, operating an unauthorized business, and extortion) and that the charges were false or fabricated.  The Court construes and disposes these claims as insufficient or no evidence claims.

The federal habeas standard for insufficiency of the evidence in a state court conviction is "whether <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (emphasis in original).  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979).  The standard for sufficiency of the evidence in a prison disciplinary hearing is much lower than in a state court criminal conviction. <u>Superintendent, Mass. Corr. Inst.v. Hill</u>, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 2774 (1985).  The standard is "whether there is any evidence .... that could support the conclusion reached by the disciplinary board."  <u>Id.</u>  A guard's written report is enough to sustain a prison disciplinary hearing. <u>Hudson v. Johnson</u>, 242 F.3d 534, 536-37 (5th Cir. 2001)(finding that a prison incident report alone constitutes "some evidence" of guilt).

Under the Jackson v. Virginia standard, the trier of fact may disregard any evidence it chooses to disregard. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789. The fact-finder can find not credible, and thus ignore, any evidence. Id. Any contradictory testimony does not affect the validity of the guilty verdict. Id. The evidence can be sufficient to support a conviction under Jackson even when it also supports a claim of innocence. Gibson v. Collins, 947 F.2d 780, 783 (5th Cir. 1991). That there was conflicting evidence does not matter in deciding constitutional sufficiency of the evidence in a state court criminal trial, much less a prison hearing. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789 (jury can ignore evidence and make any credibility decisions they choose as long as there is some evidence to support conviction under criminal trial standard of proof). That there was more or stronger evidence of a defendant's innocence does not make the evidence against him insufficient. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789.

Under ground one, Petitioner claims a denial of due process because he was falsely accused of assault and extortion at the Powledge and Pack I Units. Broadly construed, this claim concerns disciplinary convictions 1, 2, and 4. The only assault offense and hearing occurred at the Powledge Unit in case 1. Charges of extortion were lodged against Petitioner at the Powledge and Pack I Units in cases 2 and 4.

A. <u>Insufficient Evidence of the Assault</u>

Petitioner says evidence was presented which proved him innocent of the charges. Petitioner states he was confined to administrative segregation from November 9, 2004, through January 28, 2005, which proves he could not have committed the assault that occurred in the captain's office on November 11, 2004. Petitioner presented evidence of this fact at the disciplinary hearing. Petitioner says the disciplinary hearing audio tapes will demonstrate there was no evidence to support a finding that Petitioner slapped inmate Bueno. This is shown by the charging officer saying "No! Was [Walls?] did not admit to claims made by the warden that he slapped Bueno."

Petitioner asserts in his summary judgment response that Respondent's summary judgment documents show that the alleged assault occurred on October 28, 2004, not November 11, 2004, as stated in the written disciplinary charge. The written notice of the disciplinary charge given to Petitioner stated that the offense was committed on November 11, 2004, and the offense occurred in the captain's office. Petitioner points out that he was not in the captain's office on November 11, 2004, but in his cell in administrative segregation. Petitioner contends that therefore the disciplinary charge was fabricated and he is actually innocent.

Construing Petitioner's pleadings liberally, he also contends that the following discrepancy clearly proves that the disciplinary

charge was fabricated.  At the disciplinary hearing, Petitioner's counsel substitute questioned Lt. Warden about whether Petitioner had confessed to Assistant Warden Hodge that he had slapped inmate Bueno.  Lt. Warden said "he did not."  However, the earlier offense report contained a statement that Petitioner had confessed to Hodge.  Petitioner appears to take the position that this discrepancy necessarily renders the first offense report incorrect and that this incorrect statement is the result of nefarious fabrication.  Petitioner also appears to contend that because the investigation report (possibly synonymous with the charging officer's offense report) that contained the statement was not attached to the disciplinary report, it renders the investigation report unavailable to establish Petitioner's guilt.

The Respondent's summary judgment evidence shows that the disciplinary hearing officer relied on the charging officer's written report and verbal testimony to find Petitioner guilty. Exh. B, p. 1, [DE 16-3, p. 3].  The offense report was signed and prepared by Lt. Thomas Warden, the charging officer.  Id., p. 5 [DE 16-3, p. 7].  The offense report states that Petitioner assaulted inmate Bueno by slapping him across the face and that Bueno had reported the incident.  It also states  that Petitioner admitted to this behavior during an interview.  Id.  The report states that the "actual date of the incident was 10-28-04."  Id.

The disciplinary hearing audiotape submitted by Respondent

shows that Lt. Warden stated several times during the disciplinary hearing that Petitioner admitted to the Unit Warden that Petitioner slapped inmate Bueno.  TDCJ-ID Disciplinary Hearing Tape labeled Walls, Terry, #1247358,[1] Side A, counter numbers 70, 73-75, 86, 96-99, 146[2] (hereafter Tape 1, 70, 73-75, 86, 96-99, 146).[3]  Lt. Warden also stated that at one point "no one admitted" to having slapped Bueno.  Id., 72, 93, 138.  Lt. Warden further testified that initially, Petitioner denied slapping Bueno.  Id., 93, 138, 148.

The disciplinary offense report and the audiotape of the disciplinary hearing provides some evidence upon which the disciplinary hearing officer could base his finding of guilt. Hill, 472 U.S. at 455-56, 105 at S.Ct. at 2774; Hudson, 242 F.3d at 536-37.  Petitioner's showings of alleged exculpatory evidence and discrepancies do not preclude the disciplinary hearing officer from

---

[1]Respondent submitted audio tape recordings of the four disciplinary hearings on four  cassettes. The cassette containing the hearing of the assault case is labeled with Petitioner's name and TDCJ number, 1247358. The labels on the other three cassettes include the disciplinary hearing case number and Petitioner's name and prisoner number.

[2]The court notes that different tape machines may have a different tape length to counter number ratio. This court's tape machine counts 0-700 for one side of what appears to be a standard 90-minute cassette tape. The court also notes that even if the counter-tape length ratio on another machine is the same, the counter numbers should be considered approximations because of speed control adjustments necessary to hear the recording, tape stretching, differences in machines, etc.

[3]Tape 1 is the recording of the testimony in disciplinary case 1, Tape 2 is the recording of the testimony in disciplinary case 2, and so on.

finding him guilty. <u>Jackson</u>, 443 U.S. at 319; <u>see also Gibson</u>, 947 F.2d at 783. Petitioner's claims that some evidence should not have been used against him because it was not attached to the disciplinary report and similar procedural deficiencies are a matter of state law and do not implicate due process. <u>Weeks v. Scott</u>, 55 F.3d 1059, 1063 (5th Cir. 1995).

A federal court must uphold an administrative decision unless it was arbitrary and capricious. <u>Collins v. King</u>, 743 F.2d 248, 253-54 (5th Cir. 1984). The decision to find Petitioner guilty of assaulting Bueno on October 28, 2004, despite the charging instrument alleging an offense date of November 11, 2004, was not arbitrary or capricious.

The record does not raise a genuine issue of material fact that the evidence to find Petitioner guilty of assault was insufficient in violation of the Due Process Clause.

B. <u>Insufficient Evidence of Unauthorized Business in Case 2</u>

Petitioner says in the "Pow[]ledge cases," he "was assigned to an administrative segregation cell and admitted evidence of this fact into evidence, along with notarized documents which proved the petitioner had been conned out of thousands of dollars." Petitioner states he was confined to administrative segregation from November 9, 2004, through January 28, 2005, which proves he could not have committed the extortion alleged to have occurred on November 17, 2004. He also says inmate Moss was in general

-14-

population on the date of the offense.  Petitioner presented evidence of this at the disciplinary hearing.

Petitioner argues that the following evidence he submitted shows his innocence.  He submitted a bill of sale and receipt from Moss showing Moss was paid $2500 by Cheryl Long-Walls (aka Cheryl Long) for a car that Moss owned and a power of attorney signed by Moss authorizing Long to do legal research for Moss.  Petitioner also submitted a contract between Moss and Cheryl Long.  Petitioner says that nothing in this contract shows that he was a party to any alleged business dealings between Moss and Petitioner's wife.  Petitioner says Moss's mother told prison officials that Petitioner never threatened her and that Petitioner's wife refused to accept money from Moss's mother when she learned Moss already had an attorney representing him in his appeal.

The Respondent's summary judgment evidence shows that the disciplinary hearing officer relied on the charging officer's written report and verbal testimony to find Petitioner guilty. Exh. D, p. 2, [DE 16-4, p. 3].  The offense report was signed and prepared by the charging officer, Capt. Dalton Atwood.  Id., p. 6 [DE 16-4, p. 8].  The offense report stated as follows:

> "On 11/17/04 ....  Walls did attempt to extort $5,000 from offender Moss, in that offender Walls was to have his wife to perform legal research for offender Moss which was not done, when offender Moss refused to pay the fee offender Walls made threats involving offender Moss's Mother.  Additional Information. The charging officer interviewed offender Anthony Moss concerning a life endangerment investigation involving Walls.  Moss claimed

that offender Walls typed a contract in which his wife
Cheryl Long would perform legal research for offender
Moss for a fee of $5,000.  When offender Moss discovered
that nothing was being done for him he refused to pay the
fee.  Moss states that Walls made threats to him and his
mother if this fee was not paid.  Moss told the officer
that his mother had the contract in her possession.  The
officer contacted Ruby Nolley (offender Moss's mother)
via telephone.  She stated she felt she was being scammed
by offender Walls and Cheryl Long.  Mrs. Nolley did fax
the officer a copy of the mentioned contract."

At the hearing, Petitioner testified that Cheryl Long is his
wife.  Tape 2, 54.  Moss told Petitioner he was interested in
pursuing an appeal.  Id., 48-50, 67.  Petitioner told Moss he
would need an attorney to do the legal research required on the
appellate matter.  Id., 65-67.  Petitioner testified he had
approached Moss about his wife.  Id., 83, 133.  Petitioner stated
that he had put Moss in contact with his wife.  Id., 67-70, 84-90,
133-34. Moss's mother contacted Petitioner's wife about performing
legal work for Moss.  Id., 53, 70.  Petitioner admitted that he
facilitated his wife in providing legal assistance to Moss in
exchange for money.  Id., 53, 70-71, 83, 133-34.

The disciplinary hearing officer found Petitioner guilty of
the lesser-included offense of operating an unauthorized business,
based on the officer's written report and verbal testimony.
Exh. D, p. 2 [DE 16-4, p. 3].  The TDCJ Disciplinary Rules define
in pertinent part the offense under which Petitioner was ultimately
found guilty as follows:

15.1 Establishing or operating an unauthorized business - The
exchange of offender produced goods or services for financial

-16-

> gain to the offender or to a third party on behalf of the offender, if the activity:
> a. creates a risk to the safety, security, or administration of the agency; ....

Exh. J, p. 26 [DE 16-7, p. 31].   The Disciplinary Rules and Procedures further provide:

> A violation of these rules may consist of any of the following:
> 1. Engaging in the specified behavior;
> 2. Attempting to engage in the specified behavior;
> 3. Conspiring to engage in the specified behavior; or
> 4. Aiding others in conspiring, attempting, or engaging in the specified behavior.

Id., at 21 [DE 16-7, p. 26].

The pertinent potions of the offense definition under which Petitioner was found guilty require a showing of an exchange for which Petitioner generated or caused "services for financial gain to [Petitioner] or [his wife] on behalf of [Petitioner], if the activity .... create[d] a risk to the safety, security, or administration of the agency."   The testimony and other evidence adduced at the disciplinary hearing, including Petitioner's own testimony, showed that Petitioner brokered or facilitated the eventual written agreement between Moss and Petitioner's wife. Tape 2, 53, 70-71, 83, 133-34.   The offense report states that Petitioner was going to have his wife perform legal work for Moss for a fee.   Exh. D, p. 6 [DE 16-4, p. 8].   Moss said that Petitioner prepared a written contract between Petitioner's wife and Moss.   Id.   Moss said Petitioner made threats against him and his mother.   Id.

-17-

This agreement between Moss and Petitioner's wife was expressly for her to perform legal services for her financial gain and by reasonable inference for indirect, if not direct, financial gain for Petitioner. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789 (the trier of fact in criminal trial may draw reasonable inferences from the evidence presented). Moreover, Petitioner is liable for his wife's behavior because the evidence shows he acted in concert with her and aided her in attempting or engaging in the specified behavior under TDCJ Disciplinary Rule XIV (A)(2)(3).

It is not reasonably disputed that inmates bartering or trading with each other has the potential for risks to safety and internal security in prisons. Exchanges of goods and services for money or other goods and services among inmates or family members acting on behalf of inmates may create problems in many ways. Disputes may arise in the high-tension atmosphere of a prison that might result in animosity, jealousy, or other feelings, which may lead to violence. Trafficking and trading by inmates is a serious safety and security concern in prisons. See Kaestel v. Lockhart, 746 F.2d 1323, 1325 (8th Cir. 1984) ("We agree .... that the challenged policy advanced the interest of penal security and order in prohibiting contraband trading ...."); see also Sasnett v. Sullivan, 91 F.3d 1018, 1023 (7th Cir. 1996). Charging officer Atwood declared in the offense report that Moss alleged that Petitioner made threats against Moss and his mother, which shows a

risk to the safety and security of the prison.  Griffin v. Spratt,
969 F.2d 16, 22 (3rd Cir. 1992) (hearsay evidence is allowed in a
prison disciplinary proceeding) citing Wolff v. McDonnell, 418 U.S.
539, 567-68, 94 S.Ct. 2963, 2980 (1974).

Under the evidentiary standard applicable to prison
disciplinary hearings, there was sufficient evidence to support the
disciplinary hearing officer's finding of guilt on each element of
the TDCJ defined offense.  The evidence introduced at the
disciplinary hearing and reasonable inferences from it shows an
exchange of a service produced by Petitioner, i.e., acting as a
facilitator or broker, in exchange for financial gain for his wife,
which by reasonable inference, was also on behalf of Petitioner.
The evidence introduced also shows that this activity generated by
Petitioner involved potential exchanges of large sums of money
between his wife and another inmate, which creates safety and
security risks in the prison.

Petitioner also claims that documents admitted in the
disciplinary hearing showed that on November 10, 2004, the charging
officer discovered from Moss that Petitioner attempted to extort
money.  However, the disciplinary report alleged that on
November 17, 2004, at the Captain's office, Petitioner attempted to
extort $5000 by making threats against Ruby Nolley.  Petitioner
claims, based on these two assertions, that the disciplinary
hearing was fabricated.  Apparently, Petitioner concludes that the

-19-

disciplinary report was fabricated because of the alleged discrepancies between the disciplinary hearing documents and the disciplinary report. Other arguably exculpatory evidence, e.g., that Petitioner was conned out of $2500, or thousands of dollars, does not affect the outcome. These discrepancies do not show insufficient evidence in a prison disciplinary proceeding. Gibson, 947 F.2d, at 83.

The record does not raise a genuine issue of material fact the evidence to find Petitioner guilty of operating an unauthorized business was insufficient in violation of the Due Process Clause.

B. Insufficient Evidence of Extortion in Case 4

Petitioner alleges that on August 9, 2005, prison officials inadvertently assigned petitioner and inmate Moss as cell mates despite their prior conflict underlying Case 2. As a result of this assignment, Petitioner obtained "life threat endangerment protection." Petitioner was temporarily assigned to administrative segregation. Prison officials determined that Petitioner and Moss should be housed on different units. Petitioner alleges that Moss, not wanting to be the one transferred, had inmate Kline falsely accuse Petitioner of attempting to extort $5000 from Kline. At the disciplinary hearing Petitioner submitted evidence of letters from Kline to his mother in which Kline told his mother to give money to Petitioner's wife, although Petitioner's wife, Cheryl Long, had not sent or received mail in recent weeks. Therefore, Petitioner's

wife could not be part of the alleged conspiracy to extort money from Kline.  Petitioner claims that prison officials knew that his wife could not have been guilty of conspiring with Petitioner because his evidence proved the extortion letters were never mailed and destroyed.

These claims relate to the sufficiency of the evidence to satisfy due process.  They fail because the punishment imposed by the disciplinary hearing officer does not implicate due process concerns.

In this disciplinary conviction, the hearing officer punished Petitioner with 45 days of commissary and recreation restrictions, 15 days of solitary confinement, and to remain in his current good time earning custody classification status of L-3.  A prisoner's due process rights only apply to interests whose loss would involve a "significant, atypical" deprivation resulting in "hardship ... in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995).  The commissary and recreation restrictions are not significant, atypical deprivations.  Id.  Petitioner also has no due process liberty interest in avoiding solitary confinement.  See Orellana v. Kyle, 65 F.3d 29, 31 (5th Cir. 1995).  Petitioner has no due process liberty interest in his good time earning status.  Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995).

None of the deprivations suffered by Petitioner violate the

Due Process Clause.  The record does not raise a genuine issue of material fact that Petitioner suffered any due process deprivations in the extortion case.

### IV. <u>Inadequate Notice</u>

<u>Case 1</u>

Construing Petitioner's pleadings liberally, he claims that he was denied adequate notice on the assault case because the written notice he received stated that the offense was committed on November 11, 2004, whereas the evidence at the disciplinary hearing showed that Petitioner did not slap Bueno in the captain's office on that date.

The written disciplinary charge states that the assault occurred on November 11, 2004.  However, the disciplinary proceeding papers and the testimony at the disciplinary hearing show that the incident underlying the disciplinary charge occurred on October 28, 2004, and the notation in the charge that the offense occurred on November 11, 2004, is a mistake.  Exh. B, p. 4 [DE 16-3, p. 6]; Tape 1, 28-40, 78-80, 101-02, 118, 125-26. Furthermore, the Respondent's summary judgment record, including the audiotape of the hearing, and Petitioner's pleadings show that Petitioner was aware that the actual date of the incident underlying the charge against him was October 28, 2004, and that the November offense date was a mistake.  Tape 1, 40-42, 78-80, 101-02, 118, 125-26.  Moreover, Petitioner admitted to slapping

Bueno.  Exh. B, pp. 4,5,7 [DE 16-3, pp. 6,7,9]; Tape 1, 70, 73-75, 86, 96-99, 146.

Given all of the circumstances, including Petitioner's acknowledgments, the charging instrument provided constitutionally adequate notice of the offense he was accused of committing.  In Wolff v. McDonnell, the Supreme Court held "that written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Wolff, 418 U.S. at 564, 94 S.Ct. at 2979.  Petitioner knew all along that he was charged with slapping Bueno in the captain's office.  Petitioner does not claim that he was defending against another alleged assault against Bueno involving slapping him across the face in the captain's office or that he was otherwise confused.  There is abundant support in the record for the conclusion that Petitioner was notified and knew the factual basis of the disciplinary charge against him despite the incorrect date in the charging instrument.  The record shows that he was not deprived of constitutionally adequate notice of the disciplinary charge.

The record does not raise a genuine issue of material fact that Petitioner received insufficient notice in the assault case in violation of the Due Process Clause.

Case 2

Petitioner asserts that he presented evidence in the operating

an unauthorized business case that he could not have committed the extortion alleged to have occurred on November 17, 2004, in Case 2. He also submitted evidence of a bill of sale and receipt from inmate Moss showing Moss was paid $2500 by Cheryl Long for a car that Moss owned and a power of attorney signed by Moss authorizing Cheryl Long to do legal research for Moss.   Petitioner also submitted a contract between Moss and Cheryl Long.   Petitioner says that nothing in this contract shows that he was a party to any alleged business dealings between Moss and Petitioner's wife. Petitioner says Moss's mother told prison officials that Petitioner never threatened her and that Petitioner's wife refused to accept money from Moss's mother when his wife learned Moss already had an attorney representing him in his appeal.

Petitioner claims on hearing this testimony the disciplinary hearing officer found him not guilty of extortion but immediately, and without 24 hours notice, found Petitioner guilty of operating an unauthorized business in the TDCJ.   He contends this new offense is completely different from the original charge of extortion and not a lesser included offense of extortion. Petitioner was not charged with multiple offenses.   Respondent's summary judgment evidence shows Petitioner was charged with Extortion of Money, Code no. 5.1, defined as "appropriation of currency by coercion, violence, or threats of violence, with intent to deprive the owner of the currency."  Exh. J, p. 24 [Docket Entry

No. 16-7, p. 29].   Under part XIV, A, of the TDCJ Disciplinary
Rules, this offense can be committed by attempting to appropriate
money, or aiding another in appropriating or attempting to
appropriate money.   Petitioner was found guilty of a lesser
included offense, i.e., Code no. 15.1, Establishing or Operating an
Unauthorized Business.   As pertinent here, this offense is defined
as "the exchange of offender produced goods or services for
financial gain to the offender or to a third party on behalf of the
offender, if the activity .... creates a risk to the safety,
security, or administration of the agency...." Id., p. 26 [DE 16-7,
p. 31].

The TDCJ Disciplinary Rules and Procedures for Offenders
defines a lesser included offense this way:

> When it is impossible to commit a particular offense
> without, at the same time and by the same conduct,
> committing a less serious offense, the latter is a lesser
> included offense, e.g., possession of contraband and
> possession of contraband for planning escape, when the
> two charges involve the same items of contraband.

Exh. J., p. 18-19, [DE 16-7, p. 23-24].   The rules provide that
"when the hearing officer determines that a lesser-included offense
more accurately represents the offender's conduct and culpability,
the hearing officer may find the offender guilty of the lesser
included offense instead of the more serious offense, without
further notice and hearing." Id.

The disciplinary hearing officer determined that operating an
unauthorized business is a lesser included offense of extortion in

Petitioner's case.  In a non-capital state court criminal trial, the question whether an offense is a lesser included offense of another offense, and accordingly whether the defendant is entitled to a jury instruction on lesser included offense, is a matter of state law.  See Creel v. Johnson, 162 F.3d 385, 390-91 (5th Cir. 1998).  This interpretation and application of prison rules by the disciplinary hearing officer is not open to challenge here.  See Weeks, 55 F.3d at 1063 (it is not a federal habeas court's function to review a state's interpretation or application of its own law).

The Due Process Clause informs the determination of what is adequate notice without regard to a prison's rules.  In Wolff v. McDonnell, the Supreme Court held "that written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense."  Wolff, 418 U.S. at 564, 94 S.Ct. at 2978-79.  The notice is adequate if it allows the inmate to understand the charges and to marshal the facts in his defense.  Id.  It follows from the preceding discussion of Wolff that if the disciplinary hearing officer relies on facts arising from the hearing testimony but not contained in the charging instrument, a possible procedural due process violation occurs.

When a prisoner is convicted of a lesser included offense based on factual allegations contained in the original charging instrument, his due process right of advance notice has been

satisfied. Northern v. Hanks, 326 F.3d 909, 910-11 (7th Cir. 2003) (prison disciplinary proceeding did not violate inmate's due process rights where he was given advance notice of the original charge and it contained facts sufficient to apprise him that he could be subject to the modified charge). The Seventh Circuit said "[b]ecause the factual basis of the investigation report gave Northern all the information he needed to defend against the [modified] charges, the reviewing authority's modification did not deprive Northern of his due process rights." Id. at 911 (citing Holt v. Caspari, 961 F.2d 1370, 1373 (8th Cir.1992) ("prison disciplinary committee did not deny petitioner due process by elevating charge from 'possession of contraband' to 'possession of dangerous contraband' because the factual basis for both charges was the same")). These Seventh and Eighth Circuit cases are consistent with Wolff because they hold that notice is adequate when it informs the prisoner of the facts he must defend against even where the offense originally charged is modified.

Here, the written charging instrument given to Petitioner includes statements that on November 17, 2004, Petitioner "did attempt to extort $5000 from (Offender Moss, Anthony) in that Petitioner was to have his wife perform legal research for Offender Moss, which was not done. When Moss refused to pay the fee, Petitioner made threats involving Moss's mother." Petitioner was found guilty of the lesser included offense of operating an

unauthorized business.   Under the TDCJ Disciplinary Rules, this offense is defined as "the exchange of offender produced .... services for financial gain to the offender or to a third party on behalf of the offender, if the activity .... creates a risk to the safety, security, or administration of the agency...."

The allegation in the charge that "Walls was to have his wife perform legal research for Offender Moss," corresponds to the offense for which Petitioner was convicted.  Put in the simplest terms, Petitioner was given written notice accusing him of helping his wife try to get money from another in an unauthorized business dealing by coercion or violence, but was convicted of helping his wife try to get money from another in an unauthorized business dealing without using coercion or violence.  The facts provided in the written charge were sufficient to notify Petitioner that he could be subject to a charge of operating an unauthorized business. Petitioner was notified that he would have to defend a charge of helping a person try to get money from another by coercion or violence.  This included notice to defend against helping a person try to get money from another without coercion or violence in an unauthorized business dealing.  Petitioner received the notice to which he was entitled under the Due Process Clause.

As a separate matter, Petitioner admitted that he had arranged for his wife and Moss to get together to effect the potential agreement of his wife doing legal work for Moss.   It was

Petitioner's testimony which showed that he had facilitated the communication between Offender Moss and Cheryl Long, and that he ultimately assisted in setting up the contract.

The record does not raise a genuine issue of material fact that the notice provided Petitioner in the unauthorized business case was insufficient under the Due Process Clause.

Case 4

Petitioner claims that in Case 4, the disciplinary charging instrument failed to provide Petitioner notice of the "statute for which the alleged conspiracy charge derived." Petitioner also contends that he was not provided sufficient details of the charge, including the actual date and correct location of the offense. As discussed above, the punishment issued in this disciplinary case does not involve a protected liberty interest. None of the deprivations suffered by Petitioner violate the Due Process Clause.

The record does not raise a genuine issue of material fact that Petitioner suffered any due process deprivations in the extortion case.

## V. **Other Due Process Claims**

Petitioner claims that Respondent's Summary Judgment exhibit B shows that the investigation of the assault case was not started within 24 hours of when the violation was first reported. This violates § 1.C. of the disciplinary rules which states "A Preliminary Investigation Report will be started within twenty-four

hours of the time the violation is reported ...." Exh. J, p.4.; [DE 16-7, p. 9.]

Petitioner also claims that the charging officer's offense report shows and proves that the alleged assault was originally reported on October 28, 2004. Petitioner contends that under the TDCJ disciplinary rules, the disciplinary officer was prohibited from processing the charge to a major disciplinary case because this report (showing October 28 as the offense date) was not attached to the disciplinary report.

Petitioner next claims concerning the assault case that the charging officer, Lt. Thomas Warden, was prohibited from filing the disciplinary charge because he investigated it. Petitioner cites a provision on page 4 of TDCJ-CID Disciplinary Rules and Procedures for Offenders which states in part: "The Disciplinary Report cannot be processed .... without a proper investigation which includes interviews with the charging officer.... The investigating officer will be a staff member but not the person who reported the incident."

Matters such as (1) the timing of an investigation, (2) whether a charge is minor or major, and (3) whether the person reporting, investigating, and charging are the same person, do not implicate the due process requirements under Wolff v. McDonnell. These three claims are based on the TDCJ Disciplinary Rules and Procedures for Offenders. Federal habeas corpus relief will not

issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented.  See Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 480 (1991). Wolff established the principle that the disciplinary hearing officer should be impartial.  Wolff, 418 U.S. at 571-72, 94 S.Ct. at 2982.  That the officer who reports, investigates, and produces the charging instrument is the same person, does not implicate this principle, as long as he does not also preside over the disciplinary hearing.  Petitioner does not raise a genuine issue of material fact that he suffered a due process violation in the assault case concerning timing, the type of charge filed, or the roles played by the participants in the disciplinary proceedings.

Petitioner also makes a claim in the unauthorized business case concerning a potential witness.  Petitioner says that he was denied the right to call Ruby Nolley, inmate Moss's mother, as a witness in violation of Sections I(A)(4); IV(A)(8) of the TDCJ Disciplinary Rules and Procedures for Offenders.  During the disciplinary hearing, Petitioner stated he wished to "confront" Nolley.  Tape 2, 194.  The court notes that the rules cited by Petitioner do not concern calling or cross-examining witnesses.

A disciplinary hearing officer may refuse to allow a witness for "irrelevance [or] lack of necessity." Wolff, 418 U.S. at 566, 94 S.Ct. at 2980.  Nolley's testimony was arguably relevant only to the extortion charge; it does not appear relevant to the operating

an unauthorized business charge for which he was found guilty. Officials retain discretion in deciding whether it is prudent, in light of the prison's objectives of maintaining security and order, to include all requested witnesses, or whether a witness should be excluded for irrelevance, or other reasons.  Id.

Prison officials are accorded wide discretion in making these determinations.  Id.  Nolley is not a prison employee and there is no showing as to the location of her residence.  Prison disciplinary "courts" do not have subpoena powers.  Nolley would have had to voluntarily travel to the prison and voluntarily testify at the behest of an inmate whom she felt was "scamming" her and her son.  She would have been an adverse witness.  Prisoners do not have a due process right to confront and cross-examine adverse witnesses.  Wolff, 418 U.S. at 568; Baxter v. Palmigiano, 425 U.S. 308, 322, 96 S.Ct. 1551, 1560 (1976).

The record does not raise a genuine issue of material fact that Petitioner suffered violations under the preceding claims in violation of the Due Process Clause.

### VI.  Impediments to Grievances

Petitioner makes the following claims and allegations in his pleadings concerning his challenges to the disciplinary hearings under the TDCJ grievance process.

Petitioner says Officer Ramirez was not formally assigned to work as a grievance officer.  However, officials, knowing

Petitioner's medical condition, prevented him from avoiding risks of stress and maliciously impeded his attempts to prosecute appeals in each disciplinary case.

Petitioner claims he was suffering from a heart attack and a seizure which occurred on October 1, 2004, and November 22, 2004. Immediately after receiving emergency medical treatment for "heart and seizures," he was taken before the disciplinary hearing officer to defend against the extortion charge, presumably referring to case 1 as opposed to case 4.

Petitioner says that although he was very ill at the time, he did his best to present his grievances.   However, the gang intelligence officer, Ramirez, and the building major had discovered Petitioner was in critical condition and could not handle any stress without risking a stroke.   Nonetheless, Ramirez refused to process Petitioner's Step One grievance.   Petitioner further states Ramirez did her best to upset Petitioner and cause him to suffer a stroke or heart attack.   Ramirez was using the refusal to process Petitioner's grievance to achieve these results.

Petitioner claims that prison administrators were mad at him because he spoke out about their use of gas during a fight in the kitchen.   Petitioner claims grievance investigator McDurmett refused to process his step one grievances.   McDurmett told Petitioner that his grievances were not going to be filed and when Petitioner filed his writ application, the court would tell

-33-

Petitioner to refile his grievance, which would come back to McDurmett. Prison officials deliberately sought to kill Petitioner and manipulate the judicial process. Because of Petitioner's serious medical conditions, he should not be required to resubmit his grievances. Officials refused to process his grievances. Defendants impeded Petitioner's attempts to appeal disciplinary convictions under grievance procedures.

There is no constitutional right to appeal a disciplinary conviction, much less raise particular issues. See McKane v. Durston, 153 U.S. 684, 687, 14 S.Ct. 913, 915 (1894) (no constitutional right to appeal state court conviction). Furthermore, Petitioner has no specific right to a prison grievance procedure or any particular outcome. Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005) ("Geiger does not have a federally protected liberty interest in having .... grievances resolved to his satisfaction," such claims are based "on a legally nonexistent interest"). The failure to follow a procedure established by a state, such as a grievance process, is not alone a violation of due process. See Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986) (an alleged violation of a prison regulation without more does not give rise to a constitutional violation). An inmate does not have a constitutional entitlement to a grievance procedure. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994); Shango v. Jurich, 681 F.2d 1091, 1100 (7th Cir.1982); Flick v. Alba, 932 F.2d 728,

729 (8th Cir. 1991); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.
1988).

As a separate matter, Respondent's summary judgment record
shows that officials did not inappropriately hinder Petitioner from
pursuing TDCJ's grievance procedures.  To the extent he was unable
to have any of his grievances answered on the merits, that was
because Petitioner failed to follow the grievance rules.  Exh. C,
p. 6, 9 [DE 16-3, pp. 20, 23];  Exh. G, aff. [DE 16-5, p. 11];
Exh. I, aff. [DE 16-6, p. 31].

Petitioner also claims these impediments constituted a denial
of access to the courts.  A denial of the right of access to the
courts does not apply to access to an entity that is not a court,
such as a prison grievance body.  See e.g. Henthorn v. Swinson,
955 F.2d 351 (5th Cir. 1992) (to prevail on a claim for denial of
access to the courts a prisoner must show that his position in a
legal action in a court proceeding was prejudiced).

The record does not raise a genuine issue of material fact
that Petitioner suffered any constitutional deprivations concerning
his pursuit of the prison grievance procedures.

## VII. Civil Rights Claims

In claiming impediments to pursuing prison grievance
procedures, discussed in the preceding section, Petitioner makes
numerous allegations which arguably raise civil rights claims.
However, any civil rights claims Petitioner intends to raise cannot

go forward.

A national prisoner litigation index and this Court's records show that Petitioner has filed about 34 other lawsuits in the federal district courts in Texas, including transfers. The district court dismissed four of these lawsuits as frivolous, malicious, or for failure to state a claim on which relief may be granted. See Walls v. Gunn, et al., H-84-cv-3375 (S.D. Tex.); Walls v. Procunier, et al., H-84-cv-3647 (S.D. Tex.); Walls v. Procunier, et al., H-84-cv-3757 (S.D. Tex.); and Walls v. Johnson, H-98-cv-221 (S.D. Tex.). When Petitioner filed each of these cases, he was incarcerated in a prison or a detention facility. The district court dismissed each of these cases before Petitioner filed this case.

Under 28 U.S.C. § 1915(g), a prisoner is not allowed to bring a civil action in forma pauperis in federal court if, on three or more prior occasions, while incarcerated, he brought an action or appeal which the court dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, unless he is under imminent danger of serious physical injury. Adepegba v. Hammons, 103 F.3d 383, 388 (5th Cir. 1996). Petitioner's allegations here do not show that he is in imminent danger of serious physical injury. Banos v. O'Guin, 144 F.3d 883, 884 (5th Cir. 1998).

To the extent Petitioner raises civil rights claims, they are

subject to dismissal under 28 U.S.C. § 1915(g).

## VIII. <u>Conclusion</u>

The record before this Court does not raise a genuine issue of material fact that Petitioner is in custody under the challenged disciplinary proceedings in violation of the Constitution. Respondent is entitled to summary judgment on Petitioner's habeas corpus claims raised in this action. For the foregoing reasons, Respondents' Motion for Summary Judgment (Docket Entry No. 16) is **GRANTED**, Petitioner's habeas corpus application is **DENIED**, and this action will be **DISMISSED** with prejudice. All other pending motions and requests for relief are **DENIED** as moot.

This court finds that Petitioner has not made a substantial showing of the denial of a constitutional right. The issues raised here are not debatable among jurists of reason, could not be resolved in a different manner, and do not deserve encouragement to proceed further. <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983). A Certificate of Appealability will not issue in this case.

SIGNED at Houston, Texas on this 20th day of June, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE